```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2
     ------------------------------------x
 3   JANE DOE,

 4                          Plaintiff,

 5                                    22 CV 7258(CS)
         -vs-
 6
     BARD COLLEGE, a Non-Profit Educational
 7   Institution,

 8                          Defendant.

 9   ------------------------------------x

10                              United States Courthouse
                                White Plains, New York
11
                                December 5, 2022
12

13   Before, THE HONORABLE CATHY SEIBEL, District Judge

14
     APPEARANCES:
15
     LAW OFFICES OF AVERY GILBERT
16       Attorneys for Plaintiff
     BY:  AVERY GILBERT
17       ZACHARY BENDINER

18
     CALIFORNIA CIVIL RIGHTS LAW GROUP
19       Attorneys for Plaintiff
     BY:  KIRA E. BREKKE
20       LAWRENCE ORGAN
         ZARRINA OZARI
21       (via telephone)

22

23

24

25
```

1  APPEARANCES: (CONT.)

2

CULLEN & DYKMAN, LLP
3       Attorneys for Defendant
BY:  NICHOLAS J. FASO
4       SEEMA RAMBARAN

5

ALSO PRESENT:
6

SAJA SPEARMAN-WEAVER
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

120522.2                    Proceedings

 1          THE DEPUTY CLERK:  All rise.  The Honorable Cathy

 2  Seibel presiding.  Doe versus Bard College.

 3          THE COURT:  Good morning.  Everyone can have a seat.

 4          Let me have appearances, starting with plaintiff's

 5  side.

 6          MS. GILBERT:  Good morning, Your Honor.  Avery Gilbert

 7  for the plaintiff, and with me today is law student Saja

 8  Spearman-Weaver.  She is a third-year law student at Yale Law

 9  School, and she is here pursuant to the S.D.N.Y. Student

10  Practice Rule.  Thank you very much.

11          I also have my colleague, Zachary Bendiner, here.

12          THE COURT:  All right.  If anyone on the phone is

13  going to speak, they should identify themselves.

14          MR. ORGAN:  Larry Organ, Your Honor, for the

15  plaintiff.

16          MS. OZARI:  Good morning, Your Honor.  Zarrina Ozari

17  for the plaintiff.

18          MS. BREKKE:  Good morning, Your Honor.  Kira Brekke

19  for the plaintiff.

20          THE COURT:  All right.  Good morning to all of you.

21          And for defendant you are all alone?

22          MR. FASO:  Good morning, Your Honor.  Nicholas Faso

23  from Cullen & Dyckman for the defendant.  My colleague, Ms.

24  Rambaran, is making her way, and hopefully will be here shortly.

25          THE COURT:  Okay.  We can start without her?

120522.2                          Proceedings

 1          MR. FASO:  Yes, please.

 2          THE COURT:  I am prepared to rule on plaintiff's

 3 motion.

 4          Does either side have anything to add that wasn't

 5 covered by the papers?

 6          MS. GILBERT:  No, Your Honor.

 7          MR. FASO:  Your Honor, no further argument from the

 8 defendant other than what is in our papers, but I will just note

 9 since this motion became fully briefed, an additional media

10 outlet published an article with the plaintiff's name.  That

11 article was later taken down, I suspect because plaintiff's

12 legal team contacted the author of the article, but it was

13 published for all to see.

14          An additional reporter has advised us that they are

15 aware of the plaintiff's name but are waiting for the outcome of

16 this proceeding before determining whether to publish that name.

17          THE COURT:  What was the outlet that the article that

18 was published and came down was from?

19          MR. FASO:  The "Mid Hudson News," Your Honor.  And

20 then the article reporter that contacted us was from the "Red

21 Hook Daily News," I believe.

22          THE COURT:  They may have a little more reach than

23 "Inner City Press."

24          All right.  Thank you.  The motion is plaintiff's

25 motion to commence and proceed under a pseudonym.

1          I assume for purposes of the motion the parties'
2   familiarity with the facts alleged in the complaint and the
3   procedural history.  I will mention it only to the extent
4   relevant.
5          The legal standard is -- starts with Rule 10(a) of the
6   Rules of Civil Procedure, which says, "every pleading must have
7   a caption with the court's name, a title, a file number, and the
8   Rule 7(a) designation.  The title of the complaint must name all
9   the parties."
10         "This requirement, though seemingly pedestrian, serves
11  the vital purpose of facilitating public scrutiny of judicial
12  proceedings and therefore cannot be set aside lightly."  *Sealed
13  Plaintiff versus Sealed Defendant*, 537 F.3d 185 at 188 to 189.
14  It also facilitates "the public's right to know who is using
15  their courts."  *Publicola versus Lomenzo*, 2022 Westlaw 17256714
16  at page 2, the Second Circuit case from last week,
17  November 29th.
18         "Federal Court proceedings and records presumptively
19  are public absent a showing of exceptional circumstances."  *Rapp
20  versus Fowler*, 537 F.Supp.3d 521 at 526, Southern District,
21  2021.  See *Publicola* at page 3 where the circuit said that it
22  has emphasized that the general requirement of disclosure of the
23  names of parties is subject only to limited exceptions, and as
24  it said in *Sealed Plaintiff*, cannot be set aside lightly.
25         Although district courts have discretion to grant an

1    exception to Rule 10(a), they may do so only where the party

2    seeking to proceed anonymously has a substantial privacy

3    interest that outweighs any prejudice to the opposing party, and

4    that customarily -- and the customary and constitutionally

5    embedded presumption of openness in judicial proceedings.  I

6    believe that is *Rapp* at 526.

7            In determining whether to grant the party's request to

8    proceed anonymously, the Second Circuit has set forth a list of

9    ten non-exhaustive factors to consider:  "One, whether the

10   litigation involves matters that are highly sensitive and of a

11   personal nature; two, whether identification poses a risk of

12   retaliatory physical or mental harm to the party seeking to

13   proceed anonymously, or even more critically, to innocent

14   non-parties; three, whether identification presents other harms

15   and the likely severity of those harms, including whether the

16   injury litigated against would be incurred as a result of the

17   disclosure of the plaintiff's identity; four, whether the

18   plaintiff is particularly vulnerable to the possible harms of

19   disclosure, particularly in light of his age; five, whether the

20   suit is challenging the actions of the government or that of

21   private parties; six, whether the defendant is prejudiced by

22   allowing the plaintiff to process claims anonymously, whether

23   the nature of that prejudice, if any, differs at any particular

24   stage of litigation, and whether any prejudice can be mitigated

25   by the district court; seven, whether the plaintiff's identity

1  has thus far been kept confidential; eight, whether the public's
2  interest in the litigation is furthered by requiring the
3  plaintiff to disclose his identity; nine, whether because of the
4  purely legal nature of the issues presented or otherwise there
5  is an atypically weak public interest in knowing the litigant's
6  identities; and ten, whether there are any alternative
7  mechanisms for protecting the confidentiality of the plaintiff."
8  That's *Sealed Plaintiff* at 190 with internal citations,
9  quotations, et cetera, omitted.

10          "A district court is not required to list each of the
11  factors or use any particular formulation as long as the Court
12  balances the interests at stake in reaching its conclusion and
13  that's clear."  That's *Sealed Plaintiff* at 191, note 4.  It
14  remains a "presumption that parties are to proceed under their
15  respective names."  *Doe versus Skyline Auto*, 375 F.Supp.3d. 401
16  at 404, Southern District 2019.  "Courts have put weight on the
17  right of the public to know the identity of litigants, as well
18  as on the interests of the accused to be able publicly to
19  confront the accuser."  *Doe 1 versus Branca USA*, 2022 Westlaw
20  2713543 at page 2, Southern District, July 13, 2022.  Therefore,
21  the burden is on the party seeking to proceed under a pseudonym
22  to rebut the presumption of public access.  *Doe versus Juan*
23  *Gonzalez Agency*, 2022 WL 3100669 at page 2, Southern District,
24  August 4th, 2022.

25          Plaintiff argues that application of this balancing

120522.2                        Proceedings

 1  test weighs in her favor allowing her to proceed anonymously,
 2  and defendant says plaintiff has not met her burden of showing
 3  that the circumstances here warrant that extraordinary relief.
 4       Although I don't have to explicitly consider each of
 5  the factors, I will do so in turn.  And I start with the
 6  sensitivity and nature of the litigation.
 7       This first factor considers whether the litigation
 8  involves matters that are highly sensitive and of a personal
 9  nature.  That's *Sealed Plaintiff* at 190.  Plaintiff argues in
10  her memorandum, which is ECF No. 7 at page 4, that she "was
11  subjected to a variety of investigations by Bard College and
12  many pertained to sensitive matters that would harm her
13  reputation should they...be publicly associated with her."
14  These include allegations referring to her as "hyper-
15  sexualized," accusations of her having inappropriate
16  relationships and conversations with students, and labeling her
17  as emotionally abusive.  That's again at page 4.
18       Plaintiff's case against Bard College involves
19  allegation of employment discrimination and mistreatment.
20  Defendant is correct that employment discrimination claims
21  generally do not implicate matters that are highly sensitive or
22  private.  See *Abdel-Razeq versus Alvarez & Marsal*, 2015 WL
23  7017431 at page 3, Southern District, November 12, 2015, where
24  the plaintiff asserted claims of discrimination, harassment and
25  retaliation in the workplace, and the court found that the

1  allegations were substantially less sensitive than the class of

2  allegations that are typically found to meet the necessary

3  standard.  In virtually every employment discrimination case,

4  the employer asserts some form of misconduct or incompetence as

5  the nondiscriminatory reason for its actions, and if the

6  reputational harm from such assertions sufficed to proceed

7  anonymously, that would become the rule rather than the

8  exception.  The allegations here are sensitive, but I am dubious

9  that they are highly sensitive.  Even adult plaintiffs alleging

10 to have been sexually assaulted are not, without more, entitled

11 to proceed under a pseudonym.  See *Branca USA* 2022 WL 2713543 at

12 page 2.

13           But here, plaintiff also argues that the disclosure of

14 her identity would publicize her sexual orientation.  Courts in

15 this district have recognized that cases involving a party's

16 sexual orientation can involve matters of a highly sensitive or

17 personal nature.  See, for example, *Michael versus Bloomberg*,

18 2015 Westlaw 585592 at page 3, Southern District, February 11th,

19 2015, which said, "claims involving sexual orientation,

20 pregnancy, or minor children are highly sensitive or personal

21 and may justify proceeding anonymously."  And *New Jersey Media

22 Group versus Does 1-5*, 2012 Westlaw 5899331 at page 4, Southern

23 District, November 26, 2016, which included in its list of

24 highly sensitive and personal issues:  Birth control, abortion,

25 homosexuality, illegitimate children or abandoned families.

1          In cases involving sexual orientation, courts have

2    analyzed "the extent to which plaintiff has already revealed

3    their gender and sexual orientation to the general public." *Doe*

4    *versus Fedcap Rehabilitation Services*, 2018 Westlaw 2021588 at

5    page 2, Southern District, April 27, 2018.  Plaintiff's counsel

6    say in their brief that plaintiff is "generally selective about

7    the individuals to whom she intentionally reveals her sexual

8    orientation."  That's in plaintiff's brief at page 5.  No

9    citation for that statement is provided.  But it is a

10   significant overstatement, if not distortion, of what plaintiff

11   herself says in her declaration, which is that she is "not

12   always public about her sexual orientation."  That's plaintiff's

13   declaration, which is ECF No. 7-13, paragraph 15.

14          The plain implication is what while plaintiff may not

15   always go around announcing her sexual orientation, it is

16   likewise not a secret.  In common parlance, she is "out."  If

17   she were not, it would have been easy enough to say so.

18          Further, plaintiff's complaint names her former

19   domestic partner in paragraph 15.  In addition, her attorneys,

20   presumably with her permission, issued a press release regarding

21   this case, ECF 32-3.  Her attorneys were also interviewed for an

22   article in the "Yale Daily News," ECF 32-4, and assume that

23   publication confirmed that identity.  And plaintiff herself

24   apparently communicated with the author of the "Yale Daily News"

25   article in writing, and plaintiff also apparently discussed her

120522.2                        Proceedings

1  case with at least two other academics.  See ECF No. 7-13.

2  That's the declaration, at paragraph 13.  She has thus revealed

3  her identity, and therefore her orientation, to at least several

4  individuals in the context of this case, and the record is

5  devoid of evidence that she keeps her orientation secret in her

6  daily life.  "The Court is mindful that coming out is a delicate

7  process."  *Fedcap* at page 3.  But this is not a situation in

8  which plaintiff would be forced into coming out by bringing this

9  case.  Therefore, this factor does not weigh in favor of

10  anonymity or, at best, does so weakly.

11          The second factor considers "whether identification

12  poses a risk of retaliatory, physical or mental harm to the

13  party seeking to proceed anonymously or, even more critically,

14  to innocent non-parties."  *Sealed Plaintiff* at 190.  Plaintiff

15  alleges that she has been the subject of death threats from a

16  female student, who is called "Lauren Roe" in the complaint, who

17  likened herself to Ted Kaczyinski; that plaintiff has been the

18  subject of physical threats from a male student named Even

19  Quinones, who has choked other women; and that plaintiff and

20  others received an anonymous racist email from an unknown

21  person.  This is in plaintiff's memorandum at pages 5 to 6.

22          Because of defendant's alleged "encouragement of

23  violent behavior," plaintiff believes she is vulnerable to

24  attack if she does not proceed anonymously.  She also

25  expressions concern about the safety of her partner and children

1  given defendant's handling of these threats.  That's in her

2  brief at page 6.

3          Plaintiff alleges a risk of retaliatory harm, not from

4  the defendant, but from third parties.  Where the fear is of

5  retaliation by the defendant, and the defendant already knows

6  the plaintiff's identity, courts do not find any increased risk

7  of retaliation.  *Doe versus Townes*, 2020 Westlaw 2395159 at

8  page 4, Southern District, May 12, 2020.  But "if disclosure

9  creates risk of harm from third parties, disclosure is

10 disfavored."  That's *Townes* again at page 4.

11         The evidence on which plaintiff relies regarding

12 student "Lauren Roe" does not support the extent of the

13 statements in her brief.  The evidence does not include any

14 death threats against plaintiff.  Plaintiff's declaration says

15 that Roe mentioned violence in messages that "alluded" to

16 plaintiff, although they are not provided; and that Roe has

17 mentioned ISIS and made specific stabbing threats, although they

18 are not documented, and plaintiff does not say they were

19 directed at her.  That's in her affidavit, paragraphs 8 to 9.

20 Plaintiff provides an order of protection against Roe obtained

21 by another individual two and a half years ago.  That's Exhibit

22 A to the affidavit.  She also provides a text Roe sent her in

23 which Roe referred to Ted Kaczyinski, the Unabomber, but it is

24 not a fair reading to suggest that in that mention, Roe was

25 likening herself to Kaczyinski or suggesting violence.  She

1  seems to be saying Kaczyinski would not have needed to be

2  violent to get attention to his manifestos had the anonymity of

3  the Internet been available to him.  That's Exhibit B to

4  plaintiff's affidavit.  There is no indication of any recent

5  contact between plaintiff and Lauren Roe.

6          Relating to student Quinones, his interactions with

7  plaintiff occurred over seven years ago, and there is no

8  evidence of continued threat.  The anonymous email, while

9  despicable, did not contain any threat and was sent over four

10  years ago.  In short, while the incidents were no doubt

11  disturbing, the alleged threats are speculative, and

12  "speculative claims of physical or mental harms are insufficient

13  to bolster a request for anonymity."  That's *Skyline Auto* at

14  406.

15          Moreover, Lauren Roe and Ethan Quinones are going to

16  learn about this lawsuit in any event because, according to

17  plaintiff, their statements formed part of defendant's alleged

18  pretext for dismissing her.  Because plaintiff's claims put the

19  veracity of Roe's and Quinones's statements in issue, they will

20  in all likelihood be witnesses in this case.

21          I recognize that I could permit plaintiff to remain

22  unanimous until such time as depositions occur, and despite the

23  speculative nature of any threat, an excess of caution would

24  suggest that this factor weighs weakly in favor of doing so.

25          The third factor assesses whether identification

1  presents other harms and the likely severity of those harms.

2  *Sealed Plaintiff* at 190.

3          Plaintiff argues that due to years of racial trauma,

4  she has suffered from psychological harm, which would be

5  exacerbated if she cannot proceed under a pseudonym.  That's in

6  her brief at page 7.  As support, she provides a declaration

7  from a psychotherapist named Leslie Deutsche.  It's ECF

8  No. 7-15.  Courts have recognized physical harm is a justifiable

9  reason for allowing plaintiffs to proceed under a pseudonym.

10 See *Does versus Del Rio*, 241 F.R.D. 154 at 116, Southern

11 District, December 11, 2006.  The use of declarations by medical

12 professionals as support must provide a sense of the severity of

13 any consequence of a re-triggering of psychological symptoms

14 that would result from the revelation of a party's identity.

15 *Juan Gonzalez Agency* at 3.  Courts have held that it is not

16 enough to simply show that litigants may be re-triggered or re-

17 exposed to "the perceived wrong."  Rather, the evidence must

18 establish a link "between public disclosure of plaintiff's name

19 and the described psychological risk."  *Del Rio* at 16.  Sorry.

20 At 161.  And the risk -- and "the risk must arise from the

21 revelation of identity, not simply the litigation itself and the

22 inevitable reliving of events in depositions, trial testimony,

23 and cross-examination."  *Juan Gonzalez* at 3.

24          The signature line of Ms. Deutsch's declaration

25 identifies her as a licensed clinical social worker, but no

1   further information regarding her credentials, training or

2   experience is provided.  Nor does she say how long she has been

3   treating plaintiff.  Plaintiff counsel's description of Ms.

4   Deutsch's declaration again overstates what is actually there.

5   Only one paragraph of Ms. Deutsch's declaration appears to draw

6   on any professional experience.  She states in paragraph 3, "The

7   chronic stress trauma which plaintiff has been subjected to at

8   Bard has left her with a deep sense of vulnerability and

9   overwhelming feelings of anxiety and shame, which can only be

10  exacerbated if her name became publicly associated with this

11  lawsuit.  From a clinical perspective, it would add insult to

12  injury to place plaintiff at the center of further public

13  controversy, but it would be survivable."

14          Ms. Deutsch hedges.  She does not say that plaintiff

15  will suffer exacerbation of her feelings, just that

16  identification "can only" exacerbate them.  More fundamentally,

17  she does not explain how or why plaintiff's name becoming public

18  would exacerbate those feelings.  Her belief that putting

19  plaintiff at the center of a public controversy would add insult

20  to injury is not only not an expert opinion, but the same could

21  be said of any plaintiff in a discrimination case.  Nor does Ms.

22  Deutsch address the fact that plaintiff and her counsel have

23  sought at least some publicity about the case.  I do not doubt

24  that being a plaintiff in a discrimination lawsuit can cause

25  anxiety and cause one to reexperience any shame the

1  discrimination caused, but that is probably true in nearly every

2  such case.  The record here does not support the conclusion that

3  there is a psychological mechanism at work that would cause any

4  unusual harm if plaintiff proceeded under her name or that that

5  harm would be severe in comparison with the distress potentially

6  caused by the litigation itself.  See *Del Rio* at 161.

7          Plaintiff also argues that she, and others, will face

8  "adverse implications to future employment" if she cannot

9  proceed anonymously.  That's in her brief at pages 8 to 9.  To

10 the extent plaintiff is alleging that she fears retaliation from

11 defendant for bringing this action, this argument has no merit

12 because, as already discussed, defendant already knows

13 plaintiff's identity.  As to the potential impact proceeding

14 under her own name could have on future employment, plaintiff

15 does not provide any specific allegation of harm, but simply

16 states in a conclusory fashion that there may be adverse impacts

17 on future employment.  That's in her brief at 8.

18         At most, plaintiff argues, "the reputational harm to

19 plaintiff of having been even wrongly accused of inappropriate

20 fraternization with students, as well as the public outing of

21 her sexual orientation, will prevent her from getting another

22 job in academia."  That's in her reply, which is ECF No. 34 at

23 page 4.  Such general statements are not enough to justify

24 proceeding anonymously as "claims of public humiliation and

25 embarrassment...are not sufficient grounds for allowing a

1  plaintiff in a civil suit to proceed anonymously." *Doe versus*

2  *Shakur*, 164 F.R.D. 359 at 362, Southern District 1996.

3        The cases to which plaintiff points as examples of

4  courts acknowledging the harm to future employment all differ

5  significantly from the case here.  One involved an investigation

6  dealing with sexual assault; another involved the litigants'

7  immigration statuses; and the third discussed the impact of

8  having an unpopular viewpoint relating to vaccination.

9  Plaintiff doesn't say indeed whether she is even seeking

10  employment now.  She may have another job for all I know.

11  Further, plaintiff's argument not only presumes that other

12  institutions would illegally retaliate against her, but it is

13  naive to think that they would not learn of this lawsuit anyway.

14  Employers are always interested in why an applicant left her

15  previous job, and in this day and age employers routinely

16  require background checks.  It is most unlikely that a future

17  employer would not make inquiry, formal or informal, into the

18  circumstances of plaintiff's departure from Bard, and thereby

19  learn of this lawsuit.  Further, academics communicate -- and

20  even gossip -- with those in their disciplines at other

21  institutions, and it would be surprising if this lawsuit was not

22  already known within plaintiff's corner of academia.

23        Plaintiff's arguments regarding future employment are

24  conclusory and speculative, and "courts have consistently

25  rejected anonymity requests predicated on harm to a party's

1  reputational or economic interests." *Abdel-Razeq* at 4.  As

2  recognized in *Fedcap* at page 3, "plaintiff wants what most

3  employment discrimination plaintiffs would like, to sue their

4  former employer without future employers knowing about it.  But

5  while that desire is understandable, our system of dispute

6  resolution does not allow it."  Therefore, this factor weighs

7  against plaintiff's request for anonymity.

8           The next factor addresses whether plaintiff is

9  particularly vulnerable, particularly in light of her age.

10 There is no evidence that plaintiff's age or any other factor

11 would make her particularly vulnerable to the harms of

12 disclosure.  See defendant's opposition, which is ECF No. 32, at

13 page 18, note 42.  This factor weighs against plaintiff's

14 request.

15          The fifth factor looks at whether the suit is

16 challenging the actions of the government or private parties.

17 "While suits against the government involve no injury to the

18 government's reputation, suits against private parties may cause

19 damage to their good names and reputations, which supports

20 denying a request to proceed anonymously." *Doe versus Gong Xi*

21 *Fa Cai*, 2019 WL 3034793 at page 2, Southern District, July 10,

22 2019.  Bard College is clearly a private actor, and therefore,

23 this factor weighs against plaintiff's request for anonymity.

24          I next look at whether the defendant would be

25 prejudiced, whether the nature of that prejudice differs at any

1  particular stage, and whether any prejudice can be mitigated.

2  Plaintiff argues that defendant's ability to litigate this

3  action is not impaired by anonymity because defendant already

4  knows her identity, and she does not seek to impede defendant's

5  right to conduct meaningful discovery.  That's in her brief at

6  page 9.  Defendant, in their opposition at page 19, argues it

7  would be greatly prejudiced by anonymity because defendant would

8  be, "disadvantaged at all stages of litigation, including

9  settlement, discovery, and trial," would have more difficulties

10 in identifying witnesses, and would be hindered in its ability

11 to impeach plaintiff.

12         Courts in this district tend to agree with defendants,

13 finding that, "allowing plaintiff to proceed anonymously would

14 disadvantage defendants at all stages of litigation, including

15 settlement, discovery, and trial," and that "plaintiff's

16 anonymity would make it more difficult to obtain witnesses and

17 witness testimony.  Defendants would have less leverage in

18 settlement negotiations, and defendants would not be able to

19 fully and adequately cross-examine the plaintiff." *Skyline Auto*

20 at 407.  See *Juan Gonzalez* at page 4, which said that defendants

21 are aware of plaintiff's identity is not enough to negate the

22 prejudice from continued pseudonymity.  *Rapp* at 531, which noted

23 that potential witnesses with information about plaintiff are

24 unlikely to come forward when they have no way of knowing who

25 the accuser is or that their information would be pertinent; and

1  *New Jersey Media Group* at page 8, which said "since the parties

2  were at the initial stage of the litigation, the prejudice that

3  would attend the plaintiff at this stage, if the defendant is

4  permitted to proceed using the pseudonym, would be significant.

5  Significant prejudice will also attend the nonmoving party at

6  the later stages of the proceedings, including the trial, when

7  factfinding will depend, among other things, on the credibility

8  of witnesses, and the moving party's use of a pseudonym would

9  not mitigate that prejudice."

10          In response, plaintiff appears to indicate that,

11  should the case go to trial, the Court can and should follow

12  precedent where plaintiffs are required to proceed under their

13  own names for trial after being allowed to use a pseudonym for

14  pretrial stages.  That's in plaintiff's reply at page 6.  Some

15  courts have allowed plaintiffs to proceed under a pseudonym

16  during the pretrial stages, but required the parties to use

17  their own names for trial.  See *Doe versus Delta Airlines*, 310

18  F.R.D. 222 at 225, Southern District 2015, affirmed 672 F.App'x

19  48; but others have found that allowing a party to conduct

20  discovery under a pseudonym would not mitigate prejudice because

21  the nonmoving party should be entitled to learn by conducting

22  discovery using the moving party's name rather than its

23  pseudonym.  That's *New Jersey Media Group* at 8.

24          Here, defendant would be prejudiced at all stages of

25  litigation cycle.  Plaintiff's use of a pseudonym would make it

1  harder for defendants to investigate and conduct discovery, as

2  well as proceed to trial.  Indeed, plaintiff does not suggest

3  how defendant could do any of those things without using her

4  name.  Even though defendant knows plaintiff's identity, and

5  arguably, as plaintiff's argue in their reply at 6 to 7, has

6  access to contact information for students, staff and faculty at

7  the college, as well as a roster of students who have taken

8  plaintiff's classes, concealment from the public may still

9  hamper defendant's ability to conduct discovery, especially

10  discovery involving third parties.

11          Lastly, that plaintiff has, at least to an extent,

12  sought media attention, also points to prejudice toward the

13  defendant.  "Courts have found that defending against such

14  allegations publicly while a plaintiff is permitted to make her

15  accusations from behind a cloak of anonymity is prejudicial."

16  *Gong Xi Fa Cai* at 2.  Further, plaintiff in her complaint has

17  made sensitive and personal allegations against employees of

18  defendant who she named.  "Information and allegations that are

19  highly sensitive and of a personal nature can flow both ways,"

20  and plaintiff's allegations and public comments about misconduct

21  by employees of defendant embarrass them and place them under

22  the same stigma that concerns plaintiff, a stigma "would be

23  harder to mitigate against...if plaintiff were permitted to

24  remain anonymous."  *Rapp* at 531.  I know plaintiff has asked to

25  anonymize those allegations, and I will take that application up

120522.2                        Proceedings

1  in a minute, but they have been out there now for some time.

2           Therefore, on balance, this factor also weighs against

3  plaintiff's request.

4           The seventh factor assesses whether the plaintiff's

5  identity has thus far been kept confidential.  If so, this

6  weighs in favor of anonymity.  Plaintiff argues at page 8 to 9

7  of her reply although her friends and family know her identity,

8  she remains unknown to the public.  Defendant clearly knows who

9  plaintiff is, but that does not push this factor in its favor.

10 See *Gong Xi Fa Cai* at 2.  And in cases like this one where there

11 has been press coverage, but the litigant remained unnamed,

12 courts have found this factor to support anonymity.  See *Doe*

13 *versus Freydin*, 2021 WL 4991731 at page 3, Southern District,

14 October 27, 2021.

15          I think the "Inner City Press" published plaintiff's

16 name, but the press release in the "Yale Daily News" did not.

17 But despite plaintiff's name remaining confidential within this

18 action, plaintiff puts sufficient detail in her complaint,

19 including about her education and positions held, that it is a

20 snap to go online and find plaintiff's identity.  That

21 plaintiff's identity is easily discoverable makes this, at best,

22 a neutral factor.  See *Doe vs. Zinsou*, 2019 WL 3564582 at

23 page 6, Southern District, August 6, 2019.

24          The next factor is whether the public interest is

25 furthered by requiring the plaintiff to disclose her identity.

1  Plaintiff's argument at pages 10 to 11 of her brief boils down

2  to a concern that requiring her to litigate under her name would

3  cause a chilling effect on other litigants considering similar

4  rights litigation, and therefore, the public's interest supports

5  allowing her to proceed anonymously.  Defendant doesn't address

6  this factor.  In any event, generally "when the allegations

7  involve workplace harassment, courts more commonly find that the

8  public interest counsels against anonymity." *Gong Xi Fa Cai* at

9  page 2.  Indeed, even in cases involving sexual assault, where

10  the plaintiff "is correct that the public generally has an

11  interest in protecting those who make sexual assault allegations

12  so that they are not deterred from vindicating their rights, it

13  does not follow that the public has an interest in maintaining

14  the anonymity of every person who alleges sexual assault or

15  other misconduct of a highly personal nature." *Rapp* at 533.

16          Further, the public's legitimate interest "in knowing

17  the underlying facts of the litigation, including the identities

18  of litigants... is magnified" where the plaintiff "has made...

19  allegations against a public figure," *Rapp* at 532 in this case,

20  a well-known institution.  Accepting plaintiff's argument would

21  support allowing almost every civil rights or employment

22  discrimination case to proceed anonymously.  *Juan Gonzalez* at 5.

23  And that would hinder the public interest.  "Transparent

24  proceedings foster public confidence in the integrity of the

25  judiciary and serve to demonstrate to the public that the laws

1  are being enforced evenhandedly." *Abdel-Razeq* at 6.  Therefore,

2  this factor also weighs against plaintiff's request.

3          The ninth factor looks at whether the legal issues are

4  purely legal or there are other factors, meaning there is an

5  atypically weak public interest in knowing the identities of the

6  litigants.  "Where a lawsuit is brought solely against the

7  government and seeks to raise an abstract question of law that

8  affects many similarly situated individuals, the identities of

9  the particular parties bringing the suit may be largely

10 irrelevant to the public concern with the nature of the

11 process." *Del Rio* at 158.  But "private civil suits,

12 individually and certainly in the aggregate, do not only advance

13 the parties' private interests, but also further the public's

14 interest in enforcing legal and social norms." *Del Rio* at 159.

15         Where allegations involve particular actions and

16 incidents rather than public policies, "open proceedings

17 nevertheless benefit the public, as well as the parties, and

18 also serve the judicial interests in accurate factfinding and

19 fair adjudication." *Del Rio* at 159.  This case fits squarely in

20 the former category.  Plaintiff brings allegations involving

21 specific instances of workplace discrimination and harassments,

22 which courts have found to be "precisely the type of case...

23 where open proceedings would benefit the public, as well as the

24 parties, and also serve the judicial interests in accurate

25 factfinding and fair adjudication." *Freydin*, 2021 WL 4991731 at

1   page 4.

2           This factor also weighs against plaintiff's request.

3           The last factor asks whether there are alternative

4   mechanisms for protecting the confidentiality of the plaintiff.

5   Defendant argues plaintiff can seek other measures such as

6   redactions to sensitive information or protective orders.

7   That's in their opposition at 21.  And defendant clarifies that

8   it doesn't oppose the part of plaintiff's motion that seeks to

9   redact confidential information, such as the names of students

10  who filed complaints against her, or to redact personally

11  identifying information such as addresses.  But defendant

12  believes plaintiff should not be able to redact her own name or

13  information relating to a defendant's defenses.  This is all at

14  page 21.

15          Plaintiff argues that defendant's proposal is not

16  viable as an alternative mechanism because they don't protect

17  plaintiff from the potential threat of harms.  She says a

18  protective order wouldn't prevent the individuals who she fears

19  from retaliating against her or respective employers from

20  knowing that she filed suit.  That's in her rely at page 13.

21          While I am sympathetic to those concerns, I have

22  already found that the risk of either harm is speculative, and

23  in those circumstances, it cannot outweigh the public's right to

24  know.  "Sealing and redacting certain documents containing

25  sensitive information are sufficient alternatives to anonymity,

1  and in fact, routinely done in cases involving sensitive

2  matters." *Gong Xi Fa Cai* at 3.  And plaintiff "could also seek

3  a protective order in which there is a confidentiality provision

4  for documents and/or testimony that contain sensitive

5  information." *Townes* at 6.

6          Thus, this factor also weighs against plaintiff's

7  request.

8          In sum, on balance, the factors weigh decidedly

9  against anonymity.  Only two factors might weigh in favor, but

10  do so only weakly.  There is simply not enough to rebut the

11  presumption in favor of having parties proceed under their own

12  names.

13          Because plaintiff has "not met her burden of

14  demonstrating that her interest in anonymity outweighs the

15  prejudice to defendants and the customary and constitutionally

16  embedded presumption of openness in judicial proceedings,"

17  *Freydin* at 4, the request for anonymity is denied.

18          And the clerk needs to terminate ECF No. 8.

19          I agree with the parties that at this stage there is

20  in need to publicly name Lauren Roe, two women who interacted

21  with Ethan Quinones, and other recipients -- and the other

22  recipients of the anonymous racist email, and those details can

23  be redacted from the motion papers.

24          As to the application that plaintiff made on

25  November 21st, as I understand it, the parties have discussed

1  this, and plaintiff has agreed to redact the identity of

2  non-parties where the identity of the non-parties is not

3  necessary to resolution of the underlying claims, and the nature

4  of the alleged misconduct by non-parties where the identity of

5  the non-party is necessary for a resolution of the underlying

6  claims and therefore cannot be redacted, but whether the

7  non-party did or did not engage in a misconduct is unlikely to

8  be resolved.

9          I guess I am having a little trouble wrapping my mind

10 around this.  There were, I thought, some aspects of the

11 complaint that gratuitously threw in complaints of misconduct

12 that didn't seem to directly relate to the claims; but if I am

13 understanding the proposed redactions here, if they all involve

14 non-parties, obviously, the -- as the request for redactions and

15 motion papers did, the balancing there is obviously very

16 different.  So I don't -- I think the concerns come out the

17 other way, at least where the non-party has been accused of

18 misconduct.

19         So I understand Item 2 in the second paragraph of the

20 letter, this is where -- these non-parties aren't going to have

21 a chance to vindicate their views as part of this case or

22 vindicate their innocence of what they are accused of.  What --

23 but I mean, it will help in understanding Item 1, the identity

24 of non-parties where the identity is not necessary to resolution

25 of the underlying claims.  Give me an example of that.

Proceedings

1          MS. GILBERT:  Well, do you want an example using the

2   non-party's name?  So --

3          THE COURT:  You can direct me to a paragraph.

4          MS. GILBERT:  Okay, Your Honor.  So in -- let's say

5   paragraph -- okay -- of the complaint, one moment.  I didn't

6   mark all of them.

7          Okay.  Let's take paragraph 9 -- paragraphs 95 and 96.

8          THE COURT:  Well, that's somebody who's -- you are

9   accusing them of misconduct and whether he did the things you

10  are accusing him of are not going to be resolved in this case,

11  that seems to fall under Section -- Item 2 of your letter.

12         MS. GILBERT:  Oh, okay.  I understand.  I understand

13  your confusion.  Okay.  So number two is meant to address where

14  we couldn't redact the name because the name is otherwise

15  germane to resolution of the underlying claims and involved in

16  reporting structures --

17         THE COURT:  I see.

18         MS. GILBERT:  -- so then we redacted simply some of

19  the descriptions of conduct.

20         THE COURT:  I see.  So you are taking out the name

21  where you can, and where you can't, you are taking out the

22  nature of the accusation.  Well, I guess the public's interest

23  is not harmed by those redactions because --

24         MS. GILBERT:  So that's on -- I am sorry --

25  paragraph 26.

1          THE COURT:  Yes.  Now I get it.

2          MS. GILBERT:  Okay.

3          THE COURT:  Yeah, I don't think that these redactions

4   present the dangers that I've already talked about, and since

5   they involve non-parties, I will approve them.

6          So you are going to file a complaint than redacts what

7   you propose in the November 21 letter, but includes plaintiff's

8   name.

9          MR. FASO:  May I be heard on this, Your Honor?

10         THE COURT:  Yes.  Oh, I thought this was by agreement.

11         MR. FASO:  And that's why I wanted to clarify.

12         Bard did not consent to the letter request that was

13  recently filed.  We had a discussion with respect to plaintiff's

14  request to remove some of the information from the student

15  affidavits, and we said we are fine with that.  Of course, we

16  believe all student information should be redacted.  I think you

17  should also redact the names of all these nonparties.  I was

18  surprised plaintiffs agreed, and when they sent that proposed

19  letter with the proposed redactions, we had never seen it.  And

20  while we certainly would like to remove the names of these

21  non-parties who were gratuitously named, we don't understand why

22  certain of them are left in the complaint and certain are

23  proposed to be redacted, and frankly, I find the explanations

24  offered entirely incoherent.  There is no need to name a

25  non-party in a complaint.  You can call them Person-A, Person-B.

1  It's done regularly.  There is no pleading standard that

2  requires a non-party's name to be included in order to state a

3  claim that would survive a motion to dismiss.

4           So while we agree that these employees' names should

5  be removed, we think they all should be removed, not simply the

6  ones that have been selected by plaintiffs without defendant's

7  consultation.

8           THE COURT:  Well, on the same theory that I mentioned

9  a moment ago, if it says Person-A, the associate vice-president

10 of academic affairs, it's pretty easy to figure out who that is.

11          MR. FASO:  Well, and to that point, the title does not

12 need to be included either to satisfy any pleadings standard.

13          THE COURT:  Well, that's --

14          MR. FASO:  Simply say "an administrator at Bard."

15          We would like to remove all of the non-parties' names

16 who are accused of misconduct, who won't have a chance to

17 litigate those issues, to vindicate their innocence.  A lot of

18 the damage has already been done, frankly.  So while, you know,

19 this is a nice gesture, it's really an empty one that these

20 peoples' reputations will be permanently harmed by this

21 inclusion of their names in the complaint unnecessarily.

22          THE COURT:  Well, it certainly was eye-popping when I

23 read the complaint.

24          And I am interested, Ms. Gilbert, in your -- what you

25 have to say in response to the suggestion that you should be

1  just saying Person-A, who is an administrator, or Person-A, who

2  is a high-level administrator.  Why you need to -- I don't want

3  to say smear because if the allegations are true, they are not a

4  smear -- but we are probably not going to know by your own

5  admission whether or not they are true through this litigation.

6  So I will say, why do you want to tar these people with these

7  accusations that they are not going to be able to defend

8  against?  Why can't you call them Person-A, a low-level

9  administrator, mid-level administrator, high-level

10  administrator, whatever applies?

11        MS. GILBERT:  Yes, Your Honor.  So we actually looked

12  at that, and when I first had this request from defense counsel,

13  I thought that might be possible, but then looking at it, you

14  know, a big part of our claim here -- and we do need to put

15  defendant on notice of who the individuals actually are who are

16  involved in this -- and the reason why we included all of the

17  alleged misconduct that our client reported to the defendant is

18  are to show that her termination was actually not consistent

19  with Bard's policies and procedures and, in fact, in all of

20  these other instances no investigation took place, and no

21  termination took place, and these are far more egregious

22  instances of misconduct.

23        So one, to put on notice; two, if you look at, you

24  know, I think Bard College has like, you know, 15 vice

25  presidents, it gets very hard to follow who is who, and the

120522.2                          Proceedings

 1  government structure is a big part of this complaint as well as,

 2  what is the government structure that allows this kind of

 3  misconduct to continue unimpeded, and how did that play a role

 4  in the facts that are alleged in our complaint?

 5          So I -- it was -- it's very hard to -- and also it's

 6  in, you know, the public interest to be able to follow this

 7  litigation.  So and, you know, defendant Bard College will have

 8  an opportunity -- should these incidents have actually been

 9  investigated and found not to be true -- they will have an

10  opportunity to do that through the course of this litigation.

11          THE COURT:  Well, look, you are allowed to say, there

12  are other similarly situated employees who were accused of

13  similar conduct who didn't get investigated and didn't get fired

14  or accused of worse conduct.  I don't usually see their names in

15  the complaint for exactly the reasons we have been discussing.

16  It seems to me -- look, you have given the defendants a head

17  start because you have named these people, but if you just said

18  Administrator-A or Person-A, you know, probably the first

19  interrogatory they served would be:  Identify these people, and

20  you would have done it.

21          So I don't really -- absent, you know, the --

22  something specific, I don't see that it would be confusing just

23  to refer to, you know, the associate vice president of academic

24  affairs throughout as, you know, Person-A, a high-ranking vice

25  president, for example, if you are telling me there is a lot of

1  vice presidents.  Or high-ranking administrator and just call

2  him Person-A through R and, you know, the person who had only a

3  master's degree and got promoted to vice president, you know, I

4  don't know why she can't be Person-B.  You know, the -- if

5  that's considered a higher rank than associate vice president of

6  academic affairs, you know, there are ways to do it.  You can

7  say so-and-so, you know, was an administrator involved in

8  academic affairs.  So-and-so was an administrator involved in

9  student affairs.  I think there are ways to do it, and I think

10  what you guys should do is meet and confer and see what you can

11  agree to.

12          MS. OZARI:  Your Honor?  (Indecipherable)

13          THE COURT:  I am sorry.  Let me just interrupt you.

14  Whoever is speaking, you are muffled, and I couldn't tell who

15  you were or what you are saying.

16          MS. OZARI:  Zarrina Ozari for the plaintiff.  Can you

17  hear me now?

18          THE COURT:  Ms. Ozari did you say?

19          MS. OZARI:  Yes.

20          THE COURT:  Okay.  Go ahead.

21          MS. OZARI:  I just wanted to add very quickly, being

22  that there was a very strong public, especially so --

23  (indecipherable)

24          THE COURT:  I am sorry to interrupt you again, but the

25  court reporter cannot make out what you are saying.  A lot

1  slower, and I don't know if you are not -- if you're on a

2  speakerphone, get off the speaker, please.

3          MS. OZARI:  I am not.  Can you hear me better now?

4          THE COURT:  We can hear you, but you are muffled.

5  Maybe not so loud and slower.

6          MS. OZARI:  Okay.  I just wanted to add that there is

7  a strong public interest, especially for the school community,

8  in knowing the names of the employees, a case of misconduct, and

9  so I think the names should remain in the complaint.  I just

10 wanted to add that point.

11         THE COURT:  Well, if it's a prurient interest or a

12 gossip interest, I don't know how heavily that weighs.

13 Obviously, if these individuals are the sickos and predators

14 that you make them out to be, that's -- that's of serious

15 interest to the people there.

16         I am not going to shoot from the hip on this.  I was

17 educating myself on the law regarding plaintiffs being

18 anonymous.  Third parties, I am sure, are different, and if you

19 can't get to an agreement, then somebody will have to make a

20 motion.

21         This is free advice, and so it's worth what you are

22 paying for it, but if this case gets to a jury, this sort of

23 thing I think can easily backfire.  But that's just my opinion.

24 It sort of makes it seem like this lawsuit was just about

25 revenge and humiliating other people, but maybe that's not the

1  right take.

2          You folks will think about it, and you will meet and

3  confer about any further redactions, and if defendants or third

4  parties want to make a motion, they should follow the procedure

5  in my individual practices.

6          This has been out there for a while, so honestly, even

7  if you redacted everything now, it's hard to imagine that

8  students or other interested people don't already see this.  And

9  who knows, you know, maybe it's all true.  It seems farfetched,

10 but I don't know these people or anything about the atmosphere

11 up in Red Hook or whatever town we're talking about.

12         So usually I say that's what we have trials for, but

13 trials are not going to really tell us whether some of these

14 things are true.  But the parties should confer in good faith to

15 see what they can come up with, and I will read with an open

16 mind what either party has to say if it comes to a motion.

17         But in the meantime, plaintiffs will file the

18 complaint that redacts what they have agreed to and that adds

19 the plaintiff's name.  Then we will have the customary 21 days

20 to answer or seek a pre-motion conference if you are going to be

21 making a motion, and we will take it from there.

22         Is there anything else we should do this morning?

23         MR. FASO:  I will just add that we will be seeking a

24 pre-motion conference on a motion to dismiss.

25         THE COURT:  All right.  Well, I will look for that

1   21 days after the new complaint is filed.

2           All right.  If there is nothing further, we are

3   adjourned.  Everybody stay well.

4           MR. FASO:  Thank you, Your Honor.

5           MS. GILBERT:  Thank you, Your Honor.

6           MS. OZARI:  Thank you, Your Honor.

7                        -o0o-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25